1
2
3
4
5
6
7      **UNITED STATES DISTRICT COURT**
8      **DISTRICT OF NEVADA**
9
10   ERIK FLORES-GONZALES,

          Petitioner,                          3:05-cv-00647-LRH-RAM
11
     vs.                                        ORDER
12
13   CRAIG FARWELL, *et al.*,

          Respondents.
14
15
16        This habeas matter under 28 U.S.C. § 2254 comes before the Court for a decision on the

17   remaining claims.  Petitioner Erik Flores-Gonzales seeks to set aside his 2003 conviction in Nevada

18   state court, pursuant to an *Alford* plea,[1] of principal to trafficking in a Schedule I controlled substance,

19   to wit, cocaine.  Respondents seek the dismissal of the claims that remain before the Court, contending

20   that the petition is untimely, that certain claims are barred by procedural default, that certain claims are

21   not cognizable, and that the remaining claims are without merit.[2]

22        / / / /

23

24        [1]*See North Carolina v. Alford*, 400 U.S. 25, 37-38, 91 S.Ct. 160, 27 L.Ed.2d 162 (1970)(a criminal defendant
25   can enter a valid guilty plea while still maintaining his innocence if there is a factual basis for the plea and the plea is
     voluntary, knowing, and intelligent).

26
          [2]The Court previously held that certain claims were not exhausted and deferred resolution of the respondents'
27   procedural default and other issues pending the petitioner's election as to whether to dismiss the unexhausted claims or
     seek other relief.  Given the age of the case, the Court directed the respondents to present any remaining defenses along
28   with their merits in the answer. #32, at 8; #34, at 1-2.

***Preliminary Defenses***

***Timeliness***

In their prior motion to dismiss, the respondents urged that the petition was untimely.  However, the respondents erroneously relied upon the June 14, 2006, date that the amended petition (#8) was mailed for filing rather than November 20, 2005, date that the original petition (#5) was mailed for filing.  After the petitioner pointed out the respondents' error in his opposition to the motion, respondents withdrew this ground for dismissal. #31, at 3-4.  Respondents, through the same counsel, nonetheless renewed the same meritless untimeliness argument in the answer, based upon the same error.  #37, at 10-11.

The request to dismiss the petition as untimely will be denied.  The petition clearly was timely filed.[3]

***Procedural Default***

Respondents contend that the substantive claims presented for the first time in the state post-conviction petition are barred by procedural default.  The state supreme court rejected all such substantive claims on state procedural grounds and considered only claims of ineffective assistance of counsel.  Specifically, respondents contend that the following claims are barred by procedural default: (a) the equal protection claim in Ground 2; (b) the due process and equal protection claims in Grounds 3 through 5; and (c) the due process, equal protection and Eighth Amendment claims in Ground 6.

Under the procedural default doctrine, federal review of a claim may be barred if the state courts rejected the claim on an independent and adequate state law ground due to a procedural default.  Review of a defaulted claim will be barred even if the state court also rejected the claim on the merits in the same decision.  Federal habeas review will be barred on claims that were rejected on an independent and adequate state law ground unless the petitioner can demonstrate either: (a) cause for the procedural default and actual prejudice from the alleged violation of federal law; or (b) that a fundamental miscarriage of justice will result in the absence of review.  *See, e.g., Bennet v. Mueller*, 322 F.3d 573, 580 (9th Cir. 2003).

---

[3]Respondents now are represented by a different deputy attorney general.

1   The Supreme Court of Nevada declined to reach the merits of the substantive claims on state

2   post-conviction review on the following ground:

3   > To the extent that appellant raised any of the following issues
    > independently from his ineffective assistance of counsel claims, we
4   > conclude that they fall outside the scope of claims permissible in a
    > post-conviction petition for a writ of habeas corpus challenging a
5   > judgment of conviction based upon a guilty plea.  NRS 34.810(1)(a).

6   #24, Ex. 83, at 2 n.2.

7   The Court is not persuaded that N.R.S. 34.810(1)(a) constituted an adequate state law ground

8   in this case.  For a state rule to constitute an adequate state law ground to support a finding of a

9   procedural default, the state rule must be clear, consistently applied, and well-established at the time

10  of the petitioner's purported default.  *See,e.g., Melendez v. Pliler*, 288 F.3d 1120, 1126 (9th Cir. 2002);

11  *Martinez v. Klauser*, 266 F.3d 1091, 1093-94 (9th Cir. 2001).  At the time of the petitioner's purported

12  default, it was neither clear nor well-established that N.R.S. 34.810(1)(a) applied to an *Alford* plea.

13  The statute in question provides as follows:

14
15  > The [state district] court shall dismiss a petition if the court
    > determines that:

16  > (a) The petitioner's conviction was *upon a plea of guilty*
    > *or guilty but mentally ill* and the petition is not based
17  > upon an allegation that the plea was involuntarily or
    > unknowingly entered or that the plea was entered without
18  > effective assistance of counsel.

19  N.R.S. 34.810(1)(a) (emphasis added).  In *State v. Gomes*, 112 Nev. 1473, 930 P.2d 701 (1996), the

20  Supreme Court of Nevada held that – of the four statutory pleas possible in Nevada criminal cases

21  pursuant to N.R.S. 174.035(1) – an *Alford* plea constituted a *nolo contendere* plea rather than a guilty

22  plea.  112 Nev. at 1479 & n.2, 930 P.2d at 705 & n.2.  As the state high court emphasized:

23
24  > A criminal defendant in Nevada has only four possible pleas: not
    > guilty, guilty, guilty but mentally ill, or nolo contendere. NRS
    > 174.035(1). No provision is made for a fifth type of plea under *Alford*,
25  > nor would it make any sense to so provide. We expressly hold that
    > whenever a defendant maintains his or her innocence but pleads guilty
26  > pursuant to *Alford*, the plea constitutes one of nolo contendere.

27  112 Nev. at 1479, 930 P.2d at 705.  N.R.S. 34.810(1)(a) by its express terms applies to a "conviction

28  . . . upon a plea of guilty or guilty but mentally ill" and does not address a conviction upon a plea of

1  *nolo contendere.*  Consequently, it does not appear on the showing made that it was either clear or well-

2  established that N.R.S. 34.810(1)(a) applied to an *Alford* plea at the time of petitioner's purported

3  default.  *Cf. Melendez*, 288 F.3d at 1126 (while a state court's exposition of state law is entitled to great

4  deference, the state court opinion in the case did not support the conclusion that the rule was clear,

5  consistently-applied, and well-established); *Martinez*, 266 F.3d at 1094 (state rule was not an adequate

6  state law rule for purposes of the procedural default doctrine given the absence of prior authority

7  supporting the state court's application of the rule and indications that the application of the rule may

8  have been contrary to state law).[4]

9      Moreover, as the Court pointed out on the respondents' prior motion to dismiss, the due process

10  claim on Ground 4 does go to the voluntariness of the plea.  See #32, at 6.

11      The request to dismiss the above-listed substantive claims on the basis of procedural default

12  therefore will be denied.  The Court will review the substantive claims *de novo* rather than under the

13  AEDPA deferential review standard to the extent that the claims were not addressed by the Supreme

14  Court of Nevada on the merits.  *See,e.g., Chaker v. Crogan*, 428 F.3d 1215, 1221 (9th Cir. 2005).

15      The Court accordingly turns to a review on the merits as to the remaining claims.

16                                   ***Merits Review***

17      The Antiterrorism and Effective Death Penalty Act (AEDPA) imposes a "highly deferential

18  standard for evaluating state-court rulings."  *Lindh v. Murphy*, 117 S.Ct. 2059, 2066 n.7(1997).  Under

19  this deferential standard of review, a federal court may not grant habeas relief merely on the basis that

20  a state court decision was incorrect or erroneous.  *E.g., Clark v. Murphy*, 331 F.3d 1062, 1067 (9th Cir.

21  2003).  Instead, under 28 U.S.C. § 2254(d), the federal court may grant habeas relief only if the

22  decision: (1) was either contrary to or involved an unreasonable application of clearly established law

23  as determined by the United States Supreme Court; or (2) was based on an unreasonable determination

24  _____

25      [4]The Court expresses no opinion as to whether an *Alford* plea otherwise constitutes a guilty plea insofar as

26  federal authorities are concerned.  The discussion in the *Alford* decision itself strongly supports the conclusion that --
    the Nevada Supreme Court's *Gomes* state law holding notwithstanding – the United States Supreme Court views an

27  *Alford* plea as a *guilty plea* in which the defendant does not himself admit his guilt.  This Court further makes no express
    or implied holding that the federal decisions in *Tollett v. Henderson*, 411 U.S. 258, 93 S.Ct. 1602, 36 L.Ed.2d 235

28  (1973), and *Hill v. Lockhart*, 474 U.S. 52, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985), do not apply to an *Alford* guilty plea.

-4-

1    of the facts in light of the evidence presented at the state court proceeding.  *E.g.*, *Mitchell v. Esparza*,

2    540 U.S. 12, 15, 124 S.Ct. 7, 10, 157 L.Ed.2d 263 (2003).

3         A state court decision is "contrary to" law clearly established by the Supreme Court only if it

4    applies a rule that contradicts the governing law set forth in Supreme Court case law or if the decision

5    confronts a set of facts that are materially indistinguishable from a Supreme Court decision and

6    nevertheless arrives at a different result.  *E.g., Mitchell,* 540 U.S. at 15-16, 124 S.Ct. at 10.  A state

7    court decision is not contrary to established federal law merely because it does not cite the Supreme

8    Court's opinions.  *Id.*  Indeed, the Supreme Court has held that a state court need not even be aware of

9    its precedents, so long as neither the reasoning nor the result of its decision contradicts them.  *Id.*

10   Moreover, "[a] federal court may not overrule a state court for simply holding a view different from its

11   own, when the precedent from [the Supreme] Court is, at best, ambiguous."  *Mitchell*, 540 U.S. at 16,

12   124 S.Ct. at 11.  For, at bottom, a decision that does not conflict with the reasoning or holdings of

13   Supreme Court precedent is not contrary to clearly established federal law.

14        A state court decision constitutes an "unreasonable application" of clearly established federal

15   law only if it is demonstrated that the court's application of Supreme Court precedent to the facts of the

16   case was not only incorrect but "objectively unreasonable."  *E.g., Mitchell*, 540 U.S. at 18, 124 S.Ct.

17   at 12; *Davis v. Woodford*, 333 F.3d 982, 990 (9th Cir. 2003).

18        To the extent that the state court's factual findings are challenged intrinsically based upon

19   evidence in the state court record, the "unreasonable determination of fact" clause of Section 2254(d)(2)

20   controls on habeas review.  *E.g., Lambert v. Blodgett*, 393 F.3d 943, 972 (9th Cir. 2004).  This clause

21   requires that the federal courts "must be particularly deferential" to state court factual determinations.

22   *Id*.  The governing standard is not satisfied by a showing merely that the state court finding was "clearly

23   erroneous."  393 F.3d at 973.  Rather, the AEDPA requires substantially more deference:

24

25       . . . .  [I]n  concluding that a state-court finding is unsupported by
    substantial evidence in the state-court record, it is not enough that we

26       would reverse in similar circumstances if this were an appeal from a
    district court decision. Rather, we must be convinced that an appellate

27       panel, applying the normal standards of appellate review, could not
    reasonably conclude that the finding is supported by the record.

28   *Taylor v. Maddox*, 366 F.3d 992, 1000 (9th Cir. 2004); *see also Lambert*, 393 F.3d at 972.

1    If the state court factual findings withstand intrinsic review under this deferential standard, they
2    then are clothed in a presumption of correctness under 28 U.S.C. § 2254(e)(1); and they may be
3    overturned based on new evidence offered for the first time in federal court, if other procedural
4    prerequisites are met, only on clear and convincing proof.  393 F.3d at 972.

5    On the petitioner's claims of ineffective assistance of counsel, he must satisfy the two-pronged
6    test of *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).  He must
7    demonstrate that: (1) counsel's performance fell below an objective standard of reasonableness; and (2)
8    counsel's defective performance caused actual prejudice.  On the performance prong, the issue is not
9    what counsel might have done differently but rather is whether counsel's decisions were reasonable
10   from his perspective at the time.  The reviewing court starts from a strong presumption that counsel's
11   conduct fell within the wide range of reasonable conduct.  On the prejudice prong, the petitioner must
12   demonstrate a reasonable probability that, but for counsel's unprofessional errors, the result of the
13   proceeding would have been different.  *E.g., Beardslee v. Woodford*, 327 F.3d 799, 807-08 (9th Cir.
14   2003).

15   When evaluating claims of ineffective assistance of appellate counsel, the performance and
16   prejudice prongs of the *Strickland* standard partially overlap.  *E.g., Bailey v. Newland*, 263 F.3d 1022,
17   1028-29 (9th Cir. 2001); *Miller v. Keeney*, 882 F.2d 1428, 1434 (9th Cir. 1989).  Effective appellate
18   advocacy requires weeding out weaker issues with less likelihood of success.  The failure to present a
19   weak issue on appeal neither falls below an objective standard of competence nor causes prejudice to
20   the client for the same reason – because the omitted issue has little or no likelihood of success on
21   appeal.  *Id.*

22   The petitioner bears the burden of proving by a preponderance of the evidence that he is entitled
23   to habeas relief.  *Davis*, 333 F.3d at 991.

24   ***Ground 1 (part):  Alleged Failure to Federalize Claim on Direct Appeal***

25   In the remaining portion of Ground 1, petitioner alleges that he was denied effective assistance
26   of counsel when his appellate counsel allegedly failed to federalize his challenge to the state court's
27   denial of his motion to suppress his confession.  See #8, at 3B (amended petition); #32, at 2-4
28   (exhaustion holding).

On the state post-conviction appeal, the Supreme Court of Nevada did not consider this claim of ineffective assistance of appellate counsel.  See #24, Ex. 83, at 7.  This Court accordingly reviews the claim *de novo*.

As respondents point out, this claim is wholly belied by the record.  First, petitioner's appellate counsel did federalize the issue.[5]  Second, the Supreme Court of Nevada reviewed the substantive claim under federal constitutional standards on direct appeal.[6]  And, third, this Court is reviewing the underlying substantive due process claim as an exhausted federal claim, under federal Ground 2.[7]  Petitioner therefore can establish neither defective performance nor resulting prejudice on this claim.

On *de novo* review, the exhausted portion of Ground 1 therefore does not provide a basis for federal habeas relief.

### Ground 2:  Voluntariness of the Confession

In Ground 2, petitioner alleges that he was denied due process, effective assistance of counsel and equal protection when his motion to suppress his confession was denied.  Petitioner maintains that the confession was involuntary because of his alleged lack of education, inability to comprehend the English language, confusion during the transportation and interview process, and lack of understanding of the *Miranda* warnings, as well as due to the alleged two-hour length of the interview during a total of four hours in police custody.

The state district court held an evidentiary hearing on the motion to suppress.

At the hearing, the involved officers testified, collectively, as follows.[8]

Flores-Gonzales was arrested in Wendover, Nevada at approximately 1:40 p.m., and, after about fifteen minutes, he was transported to Elko, Nevada by officers other than the officers who interviewed

---

[5]#23, Ex. 58, at 4-5.

[6]#23, Ex. 60, at 1 n.3.

[7]See #32, at 4-6.

[8]The Court makes no credibility findings or other factual findings regarding the truth or falsity of the evidence at the hearing, and it summarizes the evidence solely as background to the issues presented.  No statement of fact in describing testimony constitutes a finding of fact or credibility determination by this Court.  Further, the Court does not summarize all of the evidence presented.  The Court instead summarizes the evidence pertinent to the petitioner's particular challenge to the voluntariness of his confession.

1  him.  Elko is approximately two hours travel time by automobile from Wendover.  Petitioner gave his

2  age as 23, place of birth as Mexico, and his education as 10th grade level, but without the ability to read

3  or write.[9]

4        At approximately 5:48 p.m., Sergeant John Torrise and Detective Daniel Nunez began

5  questioning Flores-Gonzales.  Torrise read petitioner the *Miranda* warnings in English, but Flores-

6  Gonzales stated to Nunez in Spanish that he wanted the warnings read to him in Spanish.  Nunez read

7  the *Miranda* warnings to Flores-Gonzales in Spanish.  Nunez asked Flores-Gonzales after the

8  advisement of each right in Spanish whether he understood the right, and Flores-Gonzales stated that

9  he did.  Nunez asked Flores-Gonzales in Spanish, after reading the entire *Miranda* warning card in

10  Spanish, whether he was willing to waive the rights and speak with the officers, and petitioner

11  responded that he was willing to speak with the officers.[10]

12        When the questioning began, Sergeant Torrise would ask a question in English and Flores-

13  Gonzales would look over to Detective Nunez, who then would translate the question to Spanish and

14  petitioner's response back to English.  However, at a certain point in the interview, Flores-Gonzales

15  stopped looking over to Nunez for translation and conversed directly back and forth with Torrise in

16  English.  Flores-Gonzales made no request for translation during this exchange.  The entire interview,

17  including the giving of the *Miranda* warnings, took only fifteen minutes.  The portion of the interview

18  involving actual questioning after the *Miranda* warnings lasted only eleven to twelve minutes.  The

19  interview was not recorded.[11]

20        Flores-Gonzales did not put on any evidence at the suppression hearing other than questioning

21  the officers.

22        In a written order denying the motion to suppress, the state district court found, *inter alia*, that

23  Flores-Gonzales was given the *Miranda* warnings first in English and then in Spanish; that he stated

24

25      [9]#23, Ex. 28, at 5-8 & 17-18.

26      [10]*Id.*, at 16, 19-20, 27, & 30-31 (Torrise); *id.*, at 48-49 (Nunez).

27
        [11]*Id.*, at 17, 23, 25, 31-34 & 37-39 (Torrise); *id.*, at 46-50 (Nunez).  See also *id.*, at 56-60 (re: communication
28  in English with an officer in the jail).

1   that he understood his rights, that he waived them, and that he would speak with the officers; that

2   Flores-Gonzales would seek clarification of questions in Spanish from Nunez, would sometimes answer

3   first in Spanish for Nunez to translate, and sometimes would answer in English; that the interview began

4   at 5:48 p.m.; that the entire interview lasted approximately fifteen minutes, with three to four minutes

5   of that time being taken up by the reading of the *Miranda* warnings, and that Flores-Gonzales

6   understood English adequately.[12]

7       Against the backdrop of these findings of fact, the state district court found that the confession

8   given to Sergeant Torrise and Detective Nunez was voluntary:

> Although the police officers should have tape recorded the interview, the Court finds their testimony believable and credible.

> Applying the above factors [from Supreme Court authority] to the case at bar it is quite clear that the Defendant's statements were voluntary.

> Although the Defendant is only twenty-three (23) he appears to be of at least average intelligence. He completed the 10th grade in school and appears to be bilingual in Spanish and English. The Defendant was advised of his Constitutional Rights in both Spanish and English. The Defendant has [sic] been in detention only four (4) hours at the time his interrogation started. Further, approximately 2½ hours of the detention involved transport from the arrest to the West Wendover Police Station and later to the Elko County Jail. The questioning of the Defendant only took fifteen (15) minutes and three to four minutes involved reading and explaining the Defendant's Miranda Rights. There was no deprivation of food or sleep upon the Defendant. The Defendant had use of a restroom and water approximately one hour prior to the interview. The Defendant never asked for food, drink, the use of a restroom, or stated that he was fatigued.

> The Defendant, after weighing his options, chose to make voluntary statements regarding his involvement in the cocaine sales at issue. There is no indication that either Torrise or Nunez used impermissible coercive methods to exact a confession such as telling the Defendant that "his failure to cooperate" would be communicated to the District Attorney's Office. Further, there is unrebutted evidence in the record that the Defendant understood all questions put to him, either in Spanish or English and that he was not tricked or coerced into making statements that were involuntary. . . . .

> Accordingly, based upon the factual findings of the court and factors stated . . . , the Court denies Defendant's Motion to Suppress his

---

[12]#23, Ex. 30, at 3, lines 10-25, & 4, lines 12-19.

1    statements, admissions or confessions . . . .

2    #23, Ex. 31, at 5-6 (case citation references omitted).

3        On direct appeal, the Supreme Court of Nevada, after stating the governing legal principles,

4    rejected the claim presented to that court on the following grounds:

5            Here, the district court's finding that appellant's statements were
         voluntary is supported by substantial evidence.  The totality of the
6        circumstances demonstrate that appellant's statements were the product
         of a rational intellect and a free will.  Appellant was approximately
7        twenty-three years of age at the time, and did not appear to suffer from
         any intellectual deficiencies.  Appellant was informed of and waived his
8        constitutional rights before the interview.   The interviews lasted
         approximately fifteen minutes.  Appellant was not deprived of food or
9        sleep or subjected to any physical punishment or coercion.  Given the
         totality of the circumstances, we conclude that the district court did not
10       err in denying the motion to suppress appellant's statements.

11   #23, Ex. 60, at 2-3.

12       The Nevada Supreme Court's rejection of the due process portion of federal Ground 2 was

13   neither contrary to nor an unreasonable application of clearly established federal law.

14       Under the Fifth Amendment, a confession is coerced or involuntary if "the defendant's will was

15   overborne at the time he confessed." *Lynumn v. Illinois*, 372 U.S. 528, 534, 83 S.Ct. 917, 9 L.Ed.2d 922

16   (1963). A totality-of-the-circumstances test applies in determining whether the will of an accused was

17   "overborne." *Schneckloth v. Bustamonte*, 412 U.S. 218, 226, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973).

18   Coercion can be mental or physical, but to render a statement involuntary, coercion must exist to such

19   a degree that the statement is not "the product of an essentially free and unconstrained choice by its

20   maker." *Schneckloth*, 412 U.S. at 225, 93 S.Ct. 2041 (*quoting Culombe v. Connecticut*, 367 U.S. 568,

21   602, 81 S.Ct. 1860, 6 L.Ed.2d 1037 (1961)); *see also Blackburn v. Alabama*, 361 U.S. 199, 206, 80

22   S.Ct. 274, 4 L.Ed.2d 242 (1960).

23       In the present case, petitioner's allegations as to, *inter alia*, his alleged inability to comprehend

24   the English language, his alleged confusion during the transportation and interview process, his alleged

25   lack of understanding of the *Miranda* warnings, and the alleged length of the interview, all explicitly

26   or implicitly contradict the factual findings made by the state district court.   Petitioner had an

27   opportunity to present opposing evidence on the motion to suppress to seek to rebut the evidence

28   supporting the state district court's factual findings, but he did not do so.  Petitioner has not identified

any evidence in the state court record that would establish that the state court's findings constituted unreasonable determinations of fact, and those findings thus now are clothed with a presumption of correctness. *Lambert v. Blodgett; supra; Taylor v. Maddox*, *supra.* Given the presumptively correct factual findings of the state district court, the Nevada Supreme Court's rejection of the petitioner's due process challenge to the voluntariness of his confession was neither contrary to nor an unreasonable application of clearly established federal law.

Further, on the factual record presented, the Court is not persuaded, on *de novo* review, that the Equal Protection Clause provides protection in this context over and above that provided by the Due Process Clause. That is, the claim presents no operative facts that would implicate the protections of the Equal Protection Clause in this case either in conjunction with or in addition to the Due Process Clause.

Petitioner otherwise does not present a viable claim of ineffective assistance of counsel under Ground 2. He alleges vaguely and conclusorily only that "counsel was ineffective by failing to suppress the alleged confession," that there was "no basis for counsel's deficient performance," and that counsel "did not use a rational and informed decision in constitutionally challenging the Motion to Suppress on appeal."[13] The Supreme Court of Nevada rejected the similarly conclusory claim presented to that court because, *inter alia*, the court had previously affirmed the judgment of conviction on the basis that the confession was made freely and voluntarily.[14] The state supreme court's rejection of this vague and nonspecific ineffective assistance claim was neither contrary to nor an unreasonable application of *Strickland*.

Ground 2 therefore does not provide a basis for federal habeas relief.

**Ground 3:   *Alleged Failure to Investigate and to Present Mitigating Evidence at Sentencing***

In Ground 3, petitioner alleges that he was denied due process, effective assistance of counsel and equal protection when his counsel allegedly failed to investigate and present mitigating evidence at his sentencing.

---

[13]#8, at 5A & 5B.

[14]#24, Ex. 83, at 3.

Flores-Gonzales entered an *Alford* plea to one count of principal to trafficking in a Schedule I controlled substance, a Category A felony under N.R.S. 453.3385(3), as more fully alleged in Count 3 of the information.  Count 3 alleged that Flores-Gonzales aided and abetted in the trafficking of a Schedule I controlled substance consisting of 28 grams or more of cocaine or a mixture containing cocaine.[15]

Under N.R.S. 453.3385(3), petitioner could have been sentenced to one of only two possible sentences.  He could have been sentenced either:  (a) for life with the possibility of parole, with eligibility for parole beginning when a minimum of 10 years had been served; or (b) for a definite term of 25 years, with eligibility for parole beginning when a minimum of 10 years had been served.

Under the plea agreement, the State and the defense agreed to jointly recommend the lesser of the only two possible sentences.  The plea agreement stated: "At the time of sentencing, the parties shall jointly recommend that Defendant be sentenced to a term of twenty-five (25) years, with eligibility for parole beginning when a minimum of ten (10) years has been served."  The plea agreement further stated: "I understand that I am not eligible for probation for the offense to which I am pleading no contest pursuant to *Alford*."[16]

The state district court sentenced Flores-Gonzales to the minimum possible sentence of a definite term of 25 years with eligibility for parole beginning after a minimum of 10 years had been served, with credit for time served.[17]

On state post-conviction review, the Supreme Court of Nevada rejected the claim of ineffective assistance of counsel presented to that court on the ground that Flore-Gonzales could not establish resulting prejudice because, *inter alia*, he "was sentenced to the exact amount of time that he stipulated to in the plea agreement, which was the minimal amount allowed by statute."[18]

//// 

---

[15]#23, Ex. 13, at 2; *id.*, Ex. 32, at 1-2.

[16]#23, Ex. 32, at 2.

[17]#23, Exhs. 47-49.

[18]#24, Ex. 83, at 3-4.

The state supreme court's rejection of this ineffective assistance claim was neither contrary to nor an unreasonable application of *Strickland*.  Petitioner cannot establish prejudice from counsel's alleged failure to develop and present mitigating evidence at sentencing because he received the minimum possible sentence on the charge to which he entered a plea.  Petitioner urges in the federal reply, without any support, that Nevada courts have previously granted probation (the contrary statement in his plea agreement that probation was not available notwithstanding) or suspended sentences in situations similar to his.  However, N.R.S. 453.3405(1) expressly provides that, except as provided in subsection (2) of that statute, which is not applicable to petitioner's case,[19] "the adjudication of guilt and imposition of sentence of a person found guilty of trafficking in a controlled substance in violation of NRS 453.3385, 453.339 or 453.3395 must not be suspended and the person is not eligible for parole until he has actually served the mandatory minimum term of imprisonment prescribed by the section under which he was convicted."  Petitioner thus received the absolute minimum sentence possible in his case.  He cannot establish prejudice under *Strickland* from an alleged failure to develop and present mitigating evidence at sentencing.

Further, on the factual record presented, the Court is not persuaded, on *de novo* review, that either the Due Process Clause or the Equal Protection Clause provides any greater protection in this context over and above the constitutional guarantee of effective assistance of counsel.  Counsel's alleged failure to develop and present mitigating evidence at the petitioner's sentencing – where he received the minimum sentence possible – violated neither the Due Process Clause nor the Equal Protection Clause.

Ground 3 therefore does not provide a basis for federal habeas relief.[20]

_____

[19]Subsection (2) refers to the possibility of reduction or suspension of sentence upon an appropriate pre-sentencing motion if the judge finds that the convicted person rendered substantial assistance in the identification, arrest, or conviction of any of his accomplices, accessories, coconspirators or principals or of any other person involved in trafficking in a controlled substance in violation of the relevant Nevada state statutes.

[20]Petitioner includes additional allegations under Ground 3 that an appropriate pre-sentencing investigation would have revealed that petitioner was not a "principal" and that he would have been found not guilty at trial due to the insufficiency of the evidence.  These remaining allegations in truth do not concern a failure to present mitigating evidence at sentencing, and the Court addresses these allegations, *infra*, in the context of the challenge to the

(continued...)

-13-

***Ground 4:   Voluntary Plea***

In Ground 4, petitioner alleges that he was denied due process, effective assistance of counsel and equal protection because his plea was not entered knowingly, intelligently, and voluntarily. Petitioner maintains, in particular: (1) that he entered a plea to a crime that does not exist under Nevada law because there allegedly is no crime under N.R.S. 453.3385 of "principal" to trafficking in a Schedule I controlled substance, and his actions did not make him a "principal;" (2) that counsel was ineffective in allowing petitioner to enter a plea to such a purportedly nonexistent crime of "principal" to trafficking and where the facts did not show petitioner to be a "principal actor;" (3) that, given this alleged gross flaw, petitioner could not have fully understood the consequences of the plea agreement; and (4) that counsel coerced petitioner into entering the plea by telling him, through the interpreter, *inter alia*, that he would have to serve only a six year minimum because he faced deportation to Mexico and immigration authorities could secure his earlier release.[21]

The plea colloquy was conducted with the use of an interpreter.  During the colloquy, Flores-Gonzales affirmed that the interpreter had translated the entire written plea agreement for him, that he had consulted with his attorney regarding the plea agreement through the interpreter, that his counsel had answered any questions about the agreement that he had through the interpreter, and that he had signed the plea agreement.[22]

The written plea agreement included the following express acknowledgments by Flores-Gonzales:

> . . . .   At the time of sentencing, the parties shall jointly recommend that Defendant be sentenced to a term of twenty-five (25)

---

[20](...continued) voluntariness of the confession under Ground 4 to the extent that the claims are cognizable.  In any event, any additional claims asserted in this regard under Ground 3 are, on *de novo* review, wholly without merit.  Both the preliminary hearing transcript and the *Alford* plea colloquy demonstrate that the State had a sufficient evidentiary basis for a conviction not only on Count 3 but as to additional serious charges as well.  Petitioner's argument that he was not a "principal" is based upon nothing more than frivolous jailhouse "logic," as there was sufficient evidence that he was an aider and abetter and thus a principal under Nevada law.

[21]#8, at 9-9B.

[22]#23, Ex. 35, at 3 & 8-9.

-14-

years, with eligibility for parole beginning when a minimum of ten (10) years has been served.

. . . . .

I understand that as a consequence of my plea of no contest pursuant to *Alford* I will b punished for one (1) count of PRINCIPAL TO [both words handwritten in, with initials] TRAFFICKING IN A SCHEDULE I CONTROLLED SUBSTANCE A CATEGORY A FELONY AS DEFINED BY NRS 453.3385(3).

A Category A Felony is punishable by imprisonment in the state prison for life with the possibility of parole, with eligibility for parole beginning when a minimum of ten (10) years has been served; or for a term of twenty-fve (25) years, with eligibility for parole beginning when a minimum of ten (10) years has been served, and a fine of not more than $500,000.

. . . . .

I understand that I am not eligible for probation for the offense to which I am pleading no contest pursuant to *Alford*.

. . . . .

I have not been promised or guaranteed any particular sentence by anyone.  I know that my sentence is to be determined by the court within the limits prescribed by statute.  I understand that if my attorney or the State of Nevada or both recommend any specific punishment to the court, the court is not obligated to accept the recommendation.

. . . . .

I am signing this agreement voluntarily, after consultation with my attorney and I am not acting under duress or coercion or by virtue of any promises of leniency, except for those set forth in this agreement.

#23, Ex. 32, at 2, 3 & 4.

During the plea colloquy, Flores-Gonzales once again expressly acknowledged, *inter alia*, that the agreement with the State provided for a recommended sentence of 25 years with parole eligibility only after a minimum of 10 years.[23]

On state post-conviction review, the Supreme Court of Nevada rejected the petitioner's overall claim that his plea was involuntary due to ineffective assistance of counsel and coercion, based in part on the petitioner's acknowledgments in connection with the plea.  The state supreme court further

---

[23]#23, Ex. 35, at 11.

rejected the petitioner's subsidiary argument that the plea was involuntary due to ineffective counsel in failing to object to the references to his conviction as a principal, as the petitioner's confession to his participation in the offense supported his conviction as a principal in the trafficking activities under N.R.S. 195.020.[24]

The state court further rejected the petitioner's reliance upon an alleged promise that he would serve only six years, on the following grounds:

> . . . [A]ppellant claimed that counsel was ineffective for misinforming him of the time that he would actually have to serve, and as a result of the misinformation, appellant's plea was involuntary and unknowing. Specifically, appellant claimed that counsel persuaded him to plead guilty by telling him that he would do less time because he was an illegal immigrant, and the United States would release him back to Mexico within six to ten years. Appellant failed to demonstrate that counsel's performance was deficient. The plea agreement specified what the term of sentence would be. During the plea canvass, appellant stated that he had consulted with his attorney prior to signing the plea agreement, the provisions and stipulated sentence had been explained to him, and a translator had been available and used. Appellant's mere subjective belief as to a potential sentence is insufficient to invalidate his guilty plea as involuntary and unknowing. Thus, the district court did not err in denying this claim.

#24, Ex. 83, at 5 (citation footnote omitted).

The state supreme court's rejection of the due process and ineffective assistance claims was neither contrary to nor an unreasonable application of clearly established federal law.

In *Blackledge v. Allison*, 431 U.S. 63, 97 S.Ct. 1621, 52 L.Ed.2d 136 (1977), the Supreme Court stated:

> . . . . [T]he representations of the defendant, his lawyer, and the prosecutor at . . . a [plea] hearing, as well as any findings made by the judge accepting the plea, constitute a formidable barrier in any subsequent collateral proceedings. Solemn declarations in open court carry a strong presumption of verity. The subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible.

431 U.S. at 73-74, 97 S.Ct. at 1629. The *Blackledge* Court observed that "a petitioner challenging a plea given pursuant to procedures [similar to those employed by the state court in this case] will

---

[24]#24, Ex. 83, at 2-3 & 4.

-16-

1    necessarily be asserting that not only his own transcribed responses, but those given by two lawyers,

2    were untruthful." 431 U.S. at 80 n.19, 97 S.Ct. at 1632 n. 19.  Under *Blackledge*, a collateral attack that

3    directly contradicts the responses at the plea proceedings "will entitle a petitioner to an evidentiary

4    hearing only in the most extraordinary circumstances."  *Id.*

5         Petitioner presented no such extraordinary circumstances here.

6         The first three bases asserted by petitioner for vacating his plea all flow from the same

7    underlying premises –  that he entered a plea to a crime that allegedly does not exist under Nevada law

8    of principal to trafficking in a Schedule I controlled substance and that he allegedly was not a "principal

9    actor." These premises are completely frivolous.  N.R.S. 453.3385 does not itself expressly provide for

10   conviction as a principal to trafficking because criminal liability as a principal – as to all crimes in

11   Nevada – is expressly provided for in N.R.S. 195.020.   Under N.R.S. 195.020, "[e]very person

12   concerned in the commission of a felony . . . whether he directly commits the act constituting the

13   offense, or aids or abet in its commission, and whether present or absent, and every person who, directly

14   or indirectly counsels, encourages, hires, commands, induces or otherwise procures another to commit

15   a felony . . . *is a principal, and shall be proceeded against and punished as such.*"  There thus was no

16   requirement that the State demonstrate that Flores-Gonzales was a "principal actor."  If he merely aided

17   and abetted the offense, directly or indirectly, he was culpable as a principal under Nevada law.  In his

18   confession, Flores-Gonzales admitted that he provided the cocaine to the seller for the purpose of his

19   then selling the drugs to the purchaser.[25]  The State therefore had an ample basis for convicting Flores-

20   Gonzales as a principal for a crime that very much did exist under Nevada law, and his counsel was in

21   no sense ineffective in recommending the plea or failing to object to his conviction as a principal.

22        The remaining basis asserted by petitioner for vacating his plea – that his counsel coerced him

23   by telling him that he would serve only six years – contradicts the express acknowledgments that Flores-

24   Gonzales made in connection with the entry of his plea.  Petitioner expressly acknowledged that he

25   could be sentenced either to life with the possibility of parole after 10 years or to 25 years with the

26   possibility of parole after 10 years.  He further expressly acknowledged that he was not acting under

27

28        [25]See,e.g., #23, Ex. 35, at 18-19 (factual basis for the plea).

-17-

1  coercion or by virtue of any promises of leniency except for those set forth in the plea agreement.

2  Petitioner may not go back on these acknowledgments after the fact and maintain that he instead was

3  acting under a promise that – the minimum 10 years before parole eligibility notwithstanding – he

4  would be released after only six years rather than the ten year minimum expressly provided for in the

5  agreement. Petitioner's argument that he was advised only of the sentence to be *imposed* and not of the

6  time to be *served* is no less frivolous than his arguments based upon the use of the word "principal" in

7  the plea agreement.

8      The Nevada Supreme Court's rejection of the due process and ineffective assistance claims

9  therefore was neither contrary to nor an unreasonable application of clearly established federal law.

10     Further, on the factual record presented, the Court is not persuaded, on *de novo* review, that the

11  Equal Protection Clause provides any greater protection in this context over and above the other

12  constitutional guarantees. Nothing in the entry of the plea violated the Equal Protection Clause.

13     Ground 4 therefore does not provide a basis for federal habeas relief.

14  ***Ground 5:   Constitutionality of N.R.S. 453.3385***

15     In Ground 5, petitioner alleges that he was denied due process, effective assistance of counsel

16  and equal protection when counsel allowed him to be convicted under an allegedly unconstitutional

17  statute. Petitioner maintains that N.R.S. 453.3385 is unconstitutionally vague and ambiguous, although

18  his supporting arguments in truth do not go to unconstitutional vagueness or ambiguity of the statute.

19  He contends: (1) that the statute impermissibly allows the defendant to be subjected to increased

20  punishment based upon facts found by the judge and not a jury as to the quantity of the drugs; (2) that

21  the statute relieves the prosecution of proving the defendant's intent, as there allegedly was never any

22  evidence that he had any intent to engage in drug trafficking; and (3) that the statute impermissibly

23  subjects the defendant to increased punishment based solely on the quantity of drugs involved rather

24  than his own participation  or actions as distinguished from the actions of a co-defendant.

25     On state post-conviction review, the Supreme Court of Nevada addressed only the portion of

26  the ineffective assistance claim premised upon the statute allegedly allowing the punishment to be

27  increased based upon findings by a judge rather than a jury. The state high court held that counsel was

28  not ineffective because the statute did not violate *Blakely v. Washington*, 542 U.S. 296, 124 S.Ct. 2531,

-18-

159 L.Ed.2d 403 (2004), and *Apprendi v. New Jersey*, 530 U.S. 466, 477 n.3, 120 S.Ct. 2348, 2356 n.3, 147 L.Ed.2d 435 (2000).[26]  The state supreme court's rejection of this aspect of the claim was neither contrary to nor an unreasonable application of clearly established federal law.  Petitioner's punishment was based upon his entry of an *Alford* plea to an offense under N.R.S. 453.3385(3), and his punishment was not enhanced by any additional determination by the judge as to the amount of drugs involved.  Under the plea, Flores-Gonzales did not contest that the State could produce evidence that the quantity involved was 28 grams or more.  If petitioner instead had opted to go to trial rather than enter a plea, the State would have been required to prove to the jury that the quantity involved was 28 grams or more.  The issue of quantity was removed from a jury's consideration not by any *Apprendi* violation created by operation of N.R.S. 453.3385 but instead by petitioner's own plea to an offense expressly based upon his being involved in the trafficking of that quantity.

This Court holds, on *de novo* review, that the remaining portions of the claim also are without merit.  Petitioner's remaining contentions flow from his underlying premise that his only involvement in the trafficking was his mere presence in a vehicle with a co-defendant when the sale to the police informant occurred, in a different vehicle and allegedly without any participation on his part.  From this premise, petitioner contends that N.R.S. 453.3385 thus allowed him to be convicted without any proof of intent on his part and without any proof of actual participation by him in the possession, sale or trafficking of a controlled substance.  Petitioner's underlying factual premise is completely flawed.  The State's case against  Flores-Gonzales was not based upon his merely being found in a vehicle with a co-defendant near where a drug transaction took place.  Flores-Gonzales instead confessed that he supplied the cocaine to the seller for the purpose of the seller then selling the drugs to the purchaser – including the two ounces of cocaine for the first sale on January 28, 2003, as to which he entered a plea.[27]  He thus was not convicted without any proof of intent or without any proof of his own significant participation in the drug trafficking.  He thus does not have any standing to raise the challenge to the statute that he

---

[26]#24, Ex. 83, at 5-6.

[27]See,e.g., #23, Ex. 8, at 42-47, 51-57 & 64-65 (Detective Nunez' preliminary hearing testimony); *id.*, at 79-103 (Sergeant Torrise's preliminary hearing testimony, including the specific content of the confession); Ex. 35, at 18-19 (factual basis for the plea).  An ounce is equal to approximately 28.3 grams.

seeks to present, and his argument that N.R.S. 453.3385 is unconstitutionally vague and ambiguous in any event is wholly without merit.  The Court accordingly rejects the remaining due process, ineffective assistance, and equal protection claims presented in Ground 5.[28]

Ground 5 therefore does not provide a basis for federal habeas relief.

---

[28]The Ninth Circuit cases relied upon by petitioner are completely irrelevant to the claims presented in Ground 5.  The cases hold that, in a federal prosecution for drug trafficking, the federal district court must determine that the defendant in question was himself actually responsible for the drug quantity in question when the court is applying the federal sentencing guidelines.  *See United States v. Rosacker*, 314 F.3d 422, 427 (9th Cir. 2002); *United States v. Culps*, 300 F.3d 1069, 1076 (9th Cir. 2002).  Flores-Gonzales was not prosecuted under federal drug trafficking laws, and he was not sentenced pursuant to the federal sentencing guidelines.  He instead was convicted under a Nevada state drug trafficking provision that specifically provided for the sentence that he received, and he was not sentenced pursuant to criteria in any sense resembling the federal sentencing guidelines.  Petitioner's sentence, again, followed not from any judicial determination of fact made by a judge but instead by his entry of a plea to an offense under N.R.S. 453.3385(3).  Nevada state law – which was the law applicable to petitioner's sentencing – included no requirement that the sentencing judge make a determination that the defendant in question was himself actually responsible for the drug quantity in question.  Moreover, the facts confessed to by Flores-Gonzales in any event would easily satisfy any such requirement, as he confessed to supplying the seller with the two ounces of cocaine that was sold, a quantity that well exceeded the 28 gram threshold of N.R.S. 453.3385(3).

Petitioner's due process and equal protection challenges to the constitutionality of N.R.S. 453.3385 in any event are not cognizable in federal habeas corpus, because of his entry of a plea.

As the Court noted previously, *supra* note 4, the discussion in the *Alford* decision strongly supports the conclusion that -- the Nevada Supreme Court's *Gomes* state law holding notwithstanding – the United States Supreme Court views an *Alford* plea as a *guilty plea* in which the defendant does not himself admit his guilt.

The Supreme Court decision in *Tollett v. Henderson*, 411 U.S. 258, 93 S.Ct. 1602, 36 L.Ed.2d 235 (1973), sharply curtails the possible grounds available for challenging a conviction entered following a guilty plea.  As the Court stated in *Tollett*:

> . . . . [A] guilty plea represents a break in the chain of events which has preceded it in the criminal process.  When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea.  He may only attack the voluntary and intelligent character of the guilty plea by showing that the advice he received from counsel was not within . . . [constitutional] standards . . . .

411 U.S. at 267, 93 S.Ct. at 1608.  Accordingly, "while claims of prior constitutional deprivation may play a part in evaluating the advice rendered by counsel, they are not themselves independent grounds for federal collateral relief." *Id.*

Ninth Circuit law confirms that the *Tollett* waiver and bar applies to *nolo contendere* pleas to the same extent as guilty pleas.  *E.g., Ortberg v. Moody*, 961 F.2d 135, 137-38 (9th Cir. 1992).  *See also Alford*, 400 U.S. at 35-38, 91 S.Ct. 160 at 166-68 (comparing nolo contendere and guilty pleas).  Thus, *Tollett* is applicable to an *Alford* plea, whether viewed as a guilty plea or instead as a *nolo contendere* plea.

Petitioner's due process and equal protection challenges to N.R.S. 453.3385 thus are not cognizable herein.

1    ***Ground 6:   Alleged Disproportionate Sentencing***

2         In Ground 6, petitioner alleges that he was denied due process, effective assistance of counsel

3    and equal protection and that he was subjected to cruel and unusual punishment when he received a

4    greater sentence than his co-defendant despite petitioner allegedly having a less substantial role in the

5    transaction.

6         Flores-Gonzales was sentenced to a term of 25 years with parole eligibility after a minimum of

7    10 years.  He alleges that his co-defendant, Kent Ronald Fullmer, received a sentence of only 2 to 6

8    years.  Petitioner asserts that Fullmer was the individual who sold the cocaine to the police informant,

9    and he maintains that Fullmer therefore was the principal agent and more culpable party.

10        The Supreme Court of Nevada rejected the ineffective assistance claim presented to that court

11   on the following grounds:

12

13              . . . [A]ppellant claimed that counsel was ineffective because
          appellant's co-defendant, who was more culpable than appellant,
          received a less harsh sentence.  Specifically, appellant claimed that

14        counsel should have insured a more proportionate sentence to the crime
          committed.  This court has consistently stated that it will not disturb a

15        district court's imposition of sentence "[w]hen the sentence is within
          statutory limits, and when there has been no proof of judicial reliance

16        upon 'impalpable or highly suspect evidence."  Appellant failed to
          demonstrate that the district court relied on impalpable or highly suspect

17        evidence, and appellant's sentence was within statutory limits.
          Appellant confessed to supplying controlled substances to his co-

18        defendant.  The district court sentenced appellant to the minimum term
          allowed in the statute.  Thus, the district court did not err in denying this

19        claim.

20   #24, Ex. 83, at 6-7.

21        The state supreme court's rejection of the ineffective assistance claim was neither contrary to

22   nor an unreasonable application of *Strickland*.

23        At the very outset, Flores-Gonzales was sentenced to the minimum possible sentence for the

24   N.R.S. 453.3385(3) offense to which he entered a plea.  If Fullmer received a lesser sentence, then he

25   necessarily would have been convicted of a different offense or offenses.  The two co-defendants

26   therefore were not similarly situated with regard to sentencing because they ultimately were not

27   convicted of the same statutory offense.  In all events, Flores-Gonzales received the *minimum sentence*

28   *possible* under the statute under which he was convicted, and he therefore could not have been

-21-

prejudiced by any failure of his trial or appellate counsel to present a – patently frivolous – disproportionate sentencing argument.  He could receive no lesser sentence than the one that he received based upon the plea that he entered.

Moreover, petitioner's moving premise that Fullmer was the principal actor and thus more culpable than he also is fundamentally flawed. As discussed above under Ground 5,[29] Flores-Gonzales confessed to supplying Fullmer with the cocaine that Fullmer sold to the police informant.    The upstream supplier of drugs sold by a downstream seller generally is regarded as the more principal actor and more culpable party in a drug trafficking scheme.[30]  Indeed, it would appear that a principal objective of the police in setting up the third sale that lead to Flores-Gonzales' arrest was to catch the supplier of the cocaine, *i.e.*, Flores-Gonzales.[31]  As the supplier of the cocaine, Flores-Gonzales was neither similarly situated to nor less culpable than the seller, Fullmer.

The Nevada Supreme Court's rejection of the ineffective assistance claim thus was in no sense either contrary to or an unreasonable application of *Strickland*.

This Court further holds, on *de novo* review, that the Eighth Amendment portion of Ground 6 also is without merit.  The Supreme Court has held that the Eighth Amendment includes only a "narrow proportionality principle," one that does not require strict proportionality between crime and sentence but instead forbids "only extreme sentences that are grossly disproportionate to the crime."  *See,e.g., Taylor v. Lewis*, 460 F.3d 1093, 1097-98 (9th Cir. 2006)(discussing, harmonizing and quoting relevant Supreme Court authorities).    Successful challenges based upon proportionality therefore are "exceedingly rare," and deference is due legislative judgments in such matters.  460 F.3d at 1098. Proportionality review in noncapital cases is conducted with primary reference to objective factors.  *Id.* Most significantly for Flores-Gonzales' argument in this case, comparison to other sentences rendered in the same jurisdiction is "'appropriate only in the rare case in which a threshold comparison of the

---

[29]See text, *supra*, at 19-20.

[30]*Cf. United States v.Shabani*, 48 F.3d 401, 404 (9th Cir. 1995)(fact that defendant was the supplier of the drugs supported a greater sentence than the defendant's coconspirators).

[31]See #23, Ex. 8, at 88-92 (Torrise preliminary hearing testimony).

-22-

1  crime committed and the sentence imposed leads to an inference of gross disproportionality.'" 460 F.3d
2  at 1098 n.7 (quoting prior Supreme Court authority).

3      In the present case, the Court is not persuaded – on a threshold comparison of the crime
4  committed and the sentence imposed – that the imposition of a mandatory minimum statutory sentence
5  of a term of 25 years with parole eligibility after a minimum of 10 years upon the supplier of two ounces
6  of cocaine leads to an inference of gross disproportionality. *Cf. Taylor*, *supra* (state court decision that
7  "three strikes" sentence of 25 years to life for possessing 0.036 grams of cocaine was not an objectively
8  unreasonable application of the Supreme Court's noncapital proportionality precedent).[32]

9      The Court accordingly is not required to proceed further under the controlling Eighth
10  Amendment analysis, including to a comparative analysis between Flores-Gonzales' sentence and that
11  imposed upon others in the jurisdiction. *See Taylor*, 460 F.3d at 1102. The Court in any event is not
12  persuaded that the imposition of a mandatory minimum statutory sentence of a term of 25 years with
13  parole eligibility after a minimum of 10 years upon the supplier of two ounces of cocaine is rendered
14  constitutionally disproportionate under the Eighth Amendment by virtue of the fact that the downstream
15  seller of the cocaine received a different sentence upon being convicted of different charges.

16      Nor is the Court persuaded that the sentence violates the Equal Protection Clause. Merely
17  because the supplier was Hispanic and the seller was Caucasian does not present a viable equal
18  protection claim, as the co-defendants were not similarly situated vis-à-vis sentencing. Flores-Gonzales
19  and Fullmer had different roles in the trafficking scheme; they were convicted of different offenses; and
20  they were sentenced under different statutory provisions. Flores-Gonzales, again, received the
21  minimum sentence to which he could be sentenced on the charge upon which he was convicted, such
22  that ethnicity in no sense could have been a factor leading to his receiving a larger sentence as to the
23  crime as to which he entered a plea. At bottom, Flores-Gonzales simply cannot establish that a
24  similarly-situated co-defendant was treated differently, as Fullmer was not similarly situated.

25  _____

26      [32]The Court notes, again, that there are approximately 28.3 grams in an ounce. Although *Taylor* involved a
27  recidivist "three strikes" offense and thus consideration of prior offenses, it nonetheless is noteworthy that the amount of
    cocaine involved in *Taylor* was 36 *milli*grams whereas Flores-Gonzales entered a plea to a charge where he confessed to
    supplying two ounces, or over 56 grams, of cocaine for sale, far more than an amount typically involved in a single
28  individual's own personal use.

-23-

1      Further, on the factual record presented, the Court is not persuaded, on *de novo* review, that the

2 Due Process Clause provides protection in this context over and above that provided by the Eighth

3 Amendment and/or the Equal Protection Clause.  That is, the claim presents no operative facts that

4 would implicate the protections of the Due Process Clause in this case, either in conjunction with or in

5 addition to the other constitutional provisions relied upon.

6      Ground 6 therefore does not provide a basis for federal habeas relief.

7      IT THEREFORE IS ORDERED that the remaining claims in the petition are DENIED on the

8 merits and that this action shall be DISMISSED with prejudice.

9      The Clerk of Court shall enter final judgment accordingly, in favor of respondents and against

10 petitioner, dismissing this action with prejudice.

11      DATED this 27th day of February, 2009.

12

13

14                                    _____

15                                    LARRY R. HICKS
                                   UNITED STATES DISTRICT JUDGE

16

17

18

19

20

21

22

23

24

25

26

27

28